### FRAZIER et al. v. OKLAHOMA GAS & ELECTRIC CO.

No. 25214.   Sept. 22, 1936.

Rehearing Denied Dec. 22, 1936.

Louis A. Reilly, for plaintiffs in error.

R. M. Campbell, Rainey, Flynn, Green & Anderson, and M. M. Gibson, for defendant in error.

OSBORN, V. C. J. This is an appeal from a judgment of the district court of Oklahoma county in a consolidated action; the plaintiffs in error, hereinafter referred to as plaintiffs, are as follows: Emma Thelma Frazier, Ivan Emit Frazier, George Hubert Frazier, minors, by B. C. Brigham, guardian of the estates of such minors, B. C. Brigham, as administrator of the estate of Joe Jasper Frazier, a deceased infant, and Colbert Curtis Frazier, a minor who reached his majority pending the action. Separate actions were instituted by each of the plaintiffs against the Oklahoma Gas & Electric Company, hereinafter referred to as defendant, in which it was alleged that plaintiffs were the owners of certificates of stock issued by defendant in February and May, 1927, which stock had been given to them by their parents, G. W. Frazier and Mrs. Louella Frazier. It was alleged that the defendant company had illegally canceled said stock certificates and reissued said shares of stock to persons other than the plaintiffs. Plaintiffs prayed for a restoration of their rights as stockholders in the defendant corporation or in the alternative for money judgments in the sum of $10,250 each, with interest. Defendant filed a general denial in each of the actions. Upon a showing that the allegations of the pleadings were identical in each of the cases, they were consolidated.

The cause was tried to the court, and judgment was rendered for defendant, and plaintiffs have appealed.

G. W. Frazier and his wife, Mrs. Louella Frazier, the parents of plaintiffs, owned an 80-acre farm near Seminole. Oil was discovered on the farm and production started in October, 1926. From that time until production ceased in 1930 the parents of plaintiffs collected in oil royalties a sum in excess of $250,000. As the income began to accumulate, plaintiffs' parents began to purchase stock in the defendant corporation. The purchases were made at intervals during a period from February to May, 1927, and totaled $100,000. Two hundred shares of the par value of $100 per share were purchased and issued in the name of G. W. Frazier. Thereafter a like amount was purchased in the name of Mrs. Louella Frazier; thereafter 100 shares were purchased in the names of each of the six minor children. (No action was filed on behalf of Wiley Earl Frazier, the oldest son.) Stock certificates were issued in the names of each of the children for the stock so purchased, but possession of the certificates was retained by the parents. Dividend checks were issued in the names of the children, but were cashed by the parents and the proceeds used for general family purposes. At the time the stock was purchased the oldest child was 19 years of age, the youngest six years of age. In October, 1927, the parents sold the stock standing in the names of the children by indorsing the names of the children to the respective stock certificates, and with the proceeds of the sale, purchased in the name of each child 100 shares of 7 per cent. cumulative preferred stock of the par value of $100 per share in the Empire Gas & Fuel Company. Certificates of stock were issued in the names of each of the children. On this transaction a profit of $1,095 was made, but no accounting for said profit was made to the children. The funds were used to pay family expenses. Dividends received upon this stock were likewise retained by the parents, with the exception of certain dividends accruing on the stock in the name of the two oldest children. In May, 1928, the stock of the Empire Gas & Fuel Com-

pany standing in the names of the children was sold by the parents and 100 shares of preferred stock in the Liberty Royalty Company was purchased in the names of each of the children. A profit of $2,600 was realized on this transaction, which amount was not credited to the children, but was expended by the parents. It appears that no dividends were received on the last-mentioned stock since January, 1930. B. C. Brigham was appointed guardian on May 14, 1931. Petitions were filed in the instant case on September 23, 1931, or approximately four years from the date of the disposal of the stock of the defendant corporation. Plaintiffs, in open court, tendered the stock of the Liberty Royalty Company to the defendant.

It is the theory of plaintiffs that the purchase of $10,000 worth of stock of the defendant corporation by the parents and the registration of such ownership upon the books of the corporation and the issuance of stock certificates in the names of the respective children, pursuant to a plan of the parents to make a gift of such stock to the children, constituted a valid and irrevocable gift, inter vivos, of such stock without actual manual delivery of such stock to the minors or a formal acceptance of such gift by them at the time. It will not be necessary at this time to refer to other propositions urged by plaintiffs.

The theory of defense in the trial court and in this court is that the stock was at all times owned by the parents, therefore, plaintiffs cannot complain of its transfer by the parents.

This is a law action which was tried before the court without the intervention of a jury, and we will not reverse the judgment if there is any competent evidence reasonably supporting it.

The general rule is that to constitute a valid gift inter vivos there must be a donor competent to make it; freedom of will on his part; an intention on his part to make it; a donee capable of taking the gift; the gift must be complete, and nothing left undone; the property must be delivered by the donor, and accepted by the donee; the gift must go into immediate and absolute effect; the gift must be gratuitous; and the gift must be irrevocable. Harmon v. Kerns, 169 Okla. 290, 36 P. (2d) 898. See, also, Jonte v. English, 171 Okla. 291, 40 P. (2d) 646; In re Widener's Estate, 130 Okla. 154, 265 P. 763; York v. Trigg, 87 Okla. 214, 209 P. 417; Fouts v. Nance, 55 Okla. 266, 155 P. 610, L. R. A. 1916E, 283; Manning v. Maytubby, 42 Okla. 414, 141 P. 781.

In the case of Bankers' Trust Co. v. Bank of Rockville C. T. Co. (N. J.) 168 Atl. 733, 89 A. L. R. 697, it is said:

"The requisites of a valid gift inter vivos are: First, a donative intent on the part of the donor; second, an actual delivery of the subject-matter of the gift unless it be a chose in action, like a certificate of shares of stock or evidence of indebtedness, in which case the delivery must be of that variety of which it is most capable; and, third, the donor must strip himself of all ownership and dominion over the subject-matter of the gift." (Citing cases.)

In the case of In re Kaufman's Estate (Pa.) 127 Atl. 133, it is said:

" 'To make a valid gift inter vivos there must be a clear, satisfactory, and unmistakable intention of the giver to part with and surrender dominion over the subject of the gift with an intention to invest the donee with the right of disposition beyond recall, accompanied by an irrevocable delivery.' Packer v. Clemson, 269 Pa. 1, 112 A. 107.

"The absolute control must be vested in the donee (Maxler v. Hawk, 233 Pa. 316, 82 A. 251, Ann. Cas. 1913B, 559; Ashman's Estate, 223 Pa. 543, 72 A. 899), and, if all dominion is not divested, the proposed gift is incomplete (Walsh's Estate, 122 Pa. 177, 15 A. 470, 1 L. R. A. 535, 9 Am. St. Rep. 83). There is no presumption of any intention to give (McConville v. Ingham, 268 Pa. 507, 112 A. 85), and the purpose to do so, followed by an actual or constructive delivery, must be shown (Yeager's Estate, 273 Pa. 359, 117 A. 67), and the burden of proving both of the necessary elements rests on the alleged donee (Maxler v. Hawks, supra; King v. King, 273 Pa. 351, 116 A. 892). The quantum of testimony required is not, however, so great where, as here, the relation of parent and child exists. Northern Trust Co. v. Huber, 274 Pa. 329, 118 A. 217; Yeager's Estate, supra."

A number of authorities are cited by plaintiffs to the effect that where a completed gift of corporate stock is intended, it is effectuated by causing such stock to be issued in the name of the donee and that the donor is thereby divested of all right and title to the stock and that the donee is thereby protected against retraction of the gift. Appeal of Roberts, 85 Pa. 84; Jean v. Jean, 207 Cal. 115, 277 P. 313; Lynch v. Lynch, 124 Cal. App. 454, 12 P. (2d) 751; Thomas v. Thomas, 70 Colo. 29, 197 P. 243; Chicago Title & T. Co. v. Ward, 332 Ill. 126, 163 N. E. 319; Phillips v. Plastridge, 107 Vt. 267, 179 A. 157, 99 A. L. R. 1074, and annotation 1077; In re King's Estate (Wyo.) 57 P. (2d) 675; Marshall v. Comm'r Internal Rev. (C. C. A.) 57 Fed. (2d) 633. To fol-

low the rule announced in these cases and to adopt the same as controlling of the issues in this case would be to ignore certain determinative and controlling issues presented under the facts in this case.

In the case of Oklahoma State Bank of Ada v. Cole, 170 Okla. 64, 38 P. (2d.) 914, this court quoted with approval from the case of Swan v. Swan's Executor, 136 Va. 496, 117 S. E. 858, as follows:

"But it is quite possible, and often happens for reasons of convenience or otherwise, that stock held in the name of one person really belongs to another. In such a case the certificate, though prima facie evidence of ownership in the person to whom it has been issued, possesses no such magic or sacredness as to prevent an inquiry into the facts. Sometimes the transferee is merely a nominal holder or 'dummy', and in that event, although the transfer may be perfectly regular, and complete on its face, the true ownership remains in the transferor, and that fact may be shown. I Cook on Corporations (4th Ed.) sec. 263; Id. sec. 421."

In the case of In re Heller's Estate, 210 Wis. 474, 246 N. W. 683, it is said:

"Numerous cases are cited by counsel relating to the effect of mere transfers of stock on the books of corporations. Some of the cases hold that a change of title is effected simply by transferring stock on the books of a corporation even though the transferor retains the certificates in his possession and does not deliver them to the transferee. Roberts'· Appeal, 85 Pa. 84; Chicago Title & Trust Co. v. Ward, 332 Ill. 126, 163 N. E. 319; Barnhouse v. Dewey, 83 Kan. 12, 109 P. 1081, 29 L. R. A. (N. S.) 166; Thomas v. Thomas, 70 Colo. 29, 197 P. 243. Other cases hold that until the certificate, reissued in the name of the transferee, is actually delivered to him by the transferor the transferee merely has nominal title to the certificate issued in his name and the transfer on the books of the corporation is ineffectual to perfect a gift where the donor retains the certificate, unless he constitutes himself a trustee for the donee. Swan v. Swan's Ex'r (1923) 136 Va. 496. 117 S. E. 858; Casteel v. Flint (1900) 112 Iowa. 92. 83 N. W. 796; Getchell v. Biddeford Nat. Bank (1900) 94 Me. 452, 47 Atl. 895. 80 Am. St. Rep. 408; Cummings v. Bramhall (1876) 120 Mass. 552, 563, 564; Jones v. Jones (Mo. App. 1918) 201 S. W. 557; Jackson v. Twenty-Third Street R. Co. (1882) 88 N. Y. 520; Besson v. Stevens (1923) 94 N. J. Eq. 549, 120 A. 640."

See, also, Grady v. Wheaton (R. I.) 100 Atl. 881; Campbell v. Sech, 155 Mich. 634, 119 N. W. 922; Beaver v. Beaver, 117 N. Y. 421, 22 N. E. 940; In re Hall's Estate, 154 Cal. 527, 98 P. 269; Lefrooth v. Prentice, 202 Cal. 215, 259 P. (849; Matthews v. Hanson, 145 Va. 614, 134 S. E. 568; Witthoft v. Commercial Development & Inv. Co., 46 Idaho, 313, 268 P. 31; Southern Ind. Inst. v. Marsh, 15 Fed. (2d) 347.

We must give effect to all the various principles of law to which we have referred in so far as they apply to the facts in this case. The burden was upon the plaintiffs to establish the necessary elements of a completed gift. The first requisite element was that of a donative intent on the part of the donor. Plaintiffs rely upon the testimony of the parents to the effect that they intended that the children should have the stock, and considered that it was "the children's stock." Such testimony, however, is wholly inconsistent with the acts and conduct of the parents. After the stock was registered on the books of the corporation in the name of the children, the dividend checks were issued to them, but were cashed by the parents and the money used for general family purposes. Substantial profits were made when the stock of the defendant company and of the Empire Gas & Fuel Company were sold, but no accounting was made to the children of the profits realized. The acts and conduct of the parents are consistent with the expression found in the testimony of Mrs. Louella Frazier that the intent was "that the children could have $10,000 apiece to start out in life on." It is elementary that a gift cannot be made to take effect in possession in futuro. Such a transaction amounts only to a promise to make a gift, and is nudum pactum. Young v. Young, 80 N. Y. 422, 36 Am. Rep. 634. It is evident that the parents intended to retain absolute control over the stock, at least during the minority of the children, and did not intend immediately to divest themselves of dominion over it. The fact that the stock was registered upon the books of the corporation in the names of the plaintiffs, in the light of all the facts in this case, is not sufficient to establish a completed gift. In those cases cited by plaintiffs it does not appear that there was a lack of donative intent on the part of the donor to make a gift in praesenti.

We conclude that the judgment of the trial court is amply supported by competent evidence.

The judgment is affirmed.

McNEILL, C. J., and RILEY, BAYLESS, BUSBY, CORN, and GIBSON, JJ., concur. WELCH and PHELPS, JJ., absent.