### KENT et al. v. TALLENT et al.

No. 8156—Opinion Filed July 22, 1919.

Rehearing Denied September 9, 1919.

(Syllabus by the Court.)

**1. Deeds—Laws Governing.**

Where a conveyance of real estate was executed prior to statehood, and while the statutes of Arkansas were yet in force in the Indian Territory, the rights of the parties to such instrument were fixed by the statutes then in force, and are not determined by chapter 13 of the Statutes f Oklahoma.

**2. Mortgages—Equitable Mortgage.**

Under the statutes of Arkansas, as construed by the Supreme Court of that state, a deed absolute on its face, if intended as a security for the payment of money, was treated in the courts of equity as a mortgage, and the rights of the parties determined as if the instrument were in fact a mortgage.

**3. Mortgages—Effect of Arkansas Mortgage.**

Under the statutes of Arkansas, as construed by the Supreme Court of that state, a mortgage of real estate, as under the common law, conveyed the legal title to the mortgagee.

**4. Deeds—Laws Governing.**

Although title to real estate may have been conveyed to a grantee under the Statutes of Arkansas prior to statehood, if, since statehood and since the Statutes of Oklahoma were put in force, he, the grantee, reconveys the title to the original grantor, such title is determined by the Statutes of Oklahoma and the right of parties to such instrument are determined thereby.

**5. Husband and Wife—Conveyance to Wife —Presumption.**

A husband has the right to convey land to his wife or to have it conveyed to her, either as a gift outright or in payment of a debt owed to her, and in the absence of fraud or interests of creditors, the presumption of law is in favor of such conveyance.

**6. Same—Title of Wife's Grantee.**

Where a husband is entitled to a reconveyance of the title to land, and expresses a desire to the reconveyancor that the deed of reconveyance be made to his wife, and in compliance with his desire and at his special request, such deed is made to his wife, she

thereby acquires title to the land, and a deed from her vests title in her grantees.

Error from District Court, Bryan County; Jesse M. Hatchett, Judge.

Action by Juanita Tallent and others against Geo. M. Kent and others. Judgment for plaintiffs. and defendants bring error. Reversed and remanded.

Hayes & McIntosh and McPherren & Cochran, for plaintiffs in error.

H. H. Loden, for defendants in error.

HARRISON, J. This was an action by Juanita Tallent et al., heirs of Pier Durant. deceased, for possession of a certain tract of land in Bryan county, and for cancellation of certain deeds to said tract. The tract in question was the surplus allotment of Pier Durant. During his lifetime, he obtained a loan of $1,000 from N. F. Frazier, and to secure the payment of same executed a warranty deed to Frazier, which deed was joined in by his wife, Melvina Durant, and though said deed was on its face an absolute conveyance, it was understood among the parties that the land would be reconveyed upon payment of the debt.

In November, 1908, the debt was paid, but N. F. Frazier, the grantee, had died in the meantime, leaving a will which constituted his wife, Emma Frazier, his executrix, with authority to convey any and all real estate of which he was possessed at his death.

Knowing the agreement between the Durants and her husband, N. F. Frazier, that the deed was intended as a conveyance to secure the payment of the loan, the executrix, Emma Frazier, proposed to reconvey the land to the Durants, whereupon Pier Durant requested that it be conveyed to his wife, Melvina Durant, for the reason that he had used a portion of her money, and that he wanted the land conveyed to her in payment of what he owed her, as he would have no other means of repaying her, whereupon Emma Frazier, the executrix, deeded the land in question to Melvina Durant.

In March, 1909, Pier Durant died, and in April, 1909, Melvina Durant deeded the land to C. H. Harden Smith, and the defendants below claimed under chain of title from Melvina Durant to C. H. Harden Smith. The plaintiffs below claimed as heirs and upon the ground that the deed from Emma Frazier to their mother, Melvina Durant, was invalid, and that her deed to Harden Smith was invalid.

It is contended by plaintiffs that the deed from Pier Durant and his wife to Frazier was a mortgage and did not convey legal title to Frazier, and that therefore Frazier could not convey legal title to Melvina Durant.

There was testimony to the effect that Durant had requested the land to be conveyed to his wife in payment of money which he had used of hers. There was also testimony by W. A. Durant that he asked his brother, Pier Durant, why he had conveyed the land to his wife, or why he had had it conveyed to her, and that Pier had answered that he had used a lot of his wife's money and would have no other way of paying her back, and had therefore had the land conveyed to her in order to pay her.

It also appears from the record that the encumbrances and conveyances of the land in question had all been executed by Pier Durant and joined in by his wife prior to and up to the time the loan to Frazier was paid, and after that time and after the land had been reconveyed by the Fraziers to Melvina Durant, in fact nine days after she had received the deed from the Fraziers, she obtained a loan on the tract of land and executed a mortgage to secure the payment of same, which mortgage was joined in by her husband, Pier Durant.

This testimony was introduced in order to prove that Pier Durant intended that his wife should have the land and have control of same and that she assumed control of same after she had received the deed to it and continued to exercise control over it during her husband's life time and to convey it after his death.

On the other hand, there was testimony that Juanita Tallent had resided on the land during a portion of the years 1907 and 1908, and had exercised control over it, renting it to other parties and collecting the rents during those years, and that she had a house on said tract which she afterwards sold. This testimony was introduced to show that their mother, Melvina Durant, had not taken charge of the land under her deed and had not exercised control over it by reason of her deed. But it appears from the record and from the testimony of W. A. Durant that the house in question was not built by Juanita Tallent, but had been built upon the land by her father, and that Juanita Tallent purchased it from her father, and that during a portion of the years 1907 and 1908 rented the land, but this is immaterial for the reason that it was all prior to the deeds to their mother, Melvina, prior to the payment of the mortgage to Frazier. November, 1908, and during the years 1907 and 1908, when the equitable title was in her father, Pier Durant. The fact that he permitted his daughter to reside upon the land and col-

lect the rents therefrom while the equities were yet in him, is no evidence of who had possession and control over it after the loan was paid off and after the Fraziers had deeded it to her mother, Melvina Durant, and there was no evidence that after the deed was made to Melvina Durant, Juanita Tallent ever exercised any further control over it or collected the rents thereafter.

It does appear, however, that from April, 1909, until this suit was filed in August, 1914, the plaintiffs, Juanita and the other children, had never questioned their mother's right to convey the land to Harden Smith, and had never questioned the soundness of his title, nor pretended to reassert the right of control over it, which Juanita claimed to have exercised during the years 1907 and 1908, when the equities were still in her father.

At the conclusion of the testimony the court made certain findings of fact and conclusions of law, and upon such findings and conclusions rendered judgment in favor of plaintiffs, Juanita Tallent et al., for a two-thirds undivided interest in the land, and in favor of defendants, Kent et al., for a one-third undivided interest therein, and decreed title in and to the respective parties accordingly.

Defendants appealed upon four specifications of error, which are presented and argued under one general proposition, that under the evidence and under the court's own findings of fact the court erred in its conclusions of law.

As to whether the court erred in its judgment, that depends, of course, on the question whether Melvina Durant had both legal and equitable title to the land in question and her title depends upon the character of title held by the Fraziers, together with the question of fact whether it was the intention of Pier Durant to have the title both legal and equitable vested in his wife, Melvina.

It is contended by defendants in error, plaintiffs below, that the deed from the Durants to Frazier was in fact a mortgage, and that therefore the Fraziers had no title to the land and could not convey itle thereto, and that the evidence was insufficient to constitute a parol gift from Pier Durant to his wife, citing in support of such contentions Levy v. Yarbrough, 41 Okla. 16, 136 Pac. 1120; Harris v. Arthur, 36 Okla. 33, 127 Pac. 695; Sutherland v. Taintor, 17 Okla. 427, 87 Pac. 900; Davis v. Judson (Cal.) 113 Pac. 147; Bringhurst v. Texas Co. (Texas) 87 S. W. 893; Neale v. Neale, 19 L. Ed. 590; Freeman v. Freeman, 43 N. Y. 34; Baldwin v. Baldwin (Kan.) 87 Pac. 568; Bevington

v. Bevington (Iowa) 110 N. W. 840; Anson v. Townsend (Cal.) 15 Pac. 49; Cuppy v. Hixon, 29 Ind. 522; Bresnahan v. Bresnahan (Minn.) 73 N. W. 515.

We have no fault to find with the foregoing authorities, either on the question that a deed absolute on its face, though in reality given to secure the payment of money, shall be treated as a mortgage, and the rights of the parties determined under the law of mortgages, or with the authorities cited in support of the contention that a parol gift or parol sale when attacked in a proper proceeding, must be supported by proof that it was the intention and desire of the donor to make the conveyance in question, and that the donee or grantee took either actual or constructive possession of the premises and thereafter exercised dominion and control over same, to the exclusion of other parties.

We fully concur in the doctrine announced in the authorities cited, but as we view them, they tend to support rather than to conflict with the views herein reached.

On the other hand, it is contended by plaintiffs in error, defendants below, that the evidence was sufficient to constitute a parol gift and sufficient to prove that Pier Durant surrendered control and dominion over said tract to his wife, Melvina, after the delivery of the deed from the Fraziers to her, and that thereafter Melvina assumed and exercised complete dominion and control over said land until she conveyed it to Harden Smith, citing a number of authorities in support of their contention, and further contended that the plaintiffs below as heirs of Pier Durant are estopped for two reasons:

First. That Pier Durant having had said land conveyed to his wife, and having held out to the world that the title was in her, would have been estopped from asserting title against C. H. Harden Smith, and that his heirs, having no better right than he, would also be estopped.

Second. That the heirs having full knowledge of the conveyance by their mother to Harden Smith, and having fully acquiesced in such conveyance, living on an adjoining tract, for a period of more than five years without ever questioning his title, permitting him to exercise complete control over and possession of said tract, having full knowledge of his selling and conveying same to other parties, without ever questioning his right to do so, are upon this ground estopped from now disturbing innocent purchasers in their title.

As stated above, the completeness of her title depends upon the character of title held

by the Fraziers, and the actual intention of Pier Durant that the title, both legal and equitable, should be vested in his wife.

The deed from the Durants to Frazier is as follows:

"This indenture, made and entered into this the 21st day of November, 1906, by and between Pier Durant and Melvina Durant, his wife, of Durant, Indian Territory, parties of the first part, and N. F. Frazier of Eldorado, Kansas, party of the second part:

"Witnesseth, that for and in consideration of $1,000 paid by the said party of the second part to the said parties of the first part, the receipt whereof is hereby acknowledged, first parties have granted, bargained, sold and conveyed and by these presents do hereby grant, bargain, sell, convey and confirm unto said party of the second part, his heirs and assigns, the following described property lying and situated in Durant recording district, Indian Territory, bounded and described as follows: East one-half of lot 4 less 4.83 acres adjoining Durant township and less a strip along south end containing one acre, containing in all 13.51 acres, together with all improvements thereon, in section 5, township 7 south, range east, together with all privileges and rights, appurtenances thereto belonging.

"To have and to hold the same unto the said party of the second part, and unto his heirs and assigns in fee simple forever, and the said Pier Durant her by covenanting that he is lawfully seized and possessed of an absolute and indefeasible estate in fee in the premises herein conveyed, and that he will and his heirs, executors, administrators and assigns shall warrant and defend the title to the said premises unto the said party of the second part, and unto his heirs and assigns forever, against the lawful claims and demands of all persons whomsoever. The above described premises being a portion of my surplus on which restrictions have been removed.

"And I, Melvina Durant, wife of the said Pier Durant, for the consideration aforesaid. do hereby release and relinquish and quit claim, transfer and convey all my right claim or possibility of dower and homestead in said real estate to the said party of the second part in fee simple forever.

"In witness whereof the parties of the first part have hereunto set their hands and seal.      Pier Durant. Melvina Durant."

The foregoing deed was acknowledged by Pier Durant and Melvina Durant separately, he acknowledging that he executed same for the consideration and purposes therein mentioned, and she acknowledging in the absence of her husband, that as his wife she had of her own free will signed and relinquished her right of dower in the homestead and had signed same for the uses therein set forth without compulsion or undue influence on the part of her husband.

This deed on its face is an absolute conveyance of fee simple title; it contains no qualification nor provision for defeasance and but for the honesty of the Fraziers, the court would never have known of any other agreement between the parties, except that set forth in the deed itself, but it so happened that Emma Frazier, the wife of N. F. Frazier, the grantee, and R. E. Frazier, the son of the grantee, both knew of the parol agreement between N. F. Frazier and Pier Durant, that Frazier would reconvey the land upon payment of the money advanced to Durant and the interest due thereon. R. E. Frazier, the son, knew also the reason why a deed instead of a mortgage was made, and testified that previous to the execution of the deed to his father, Pier Durant had borrowed $500 from his father, N. F. Frazier, and gave him a mortgage on the land, and that before the satisfaction of said mortgage he sought to borrow $500 more, and to give him a mortgage on the land to secure the payment of same, but that N. F. Frazier declined to loan the additional $500 and take a mortgage, but advanced the extra $500 upon condition that the Durants make him a deed to the land; this condition was complied with by the Durants, and having delivered the deed the agreement was reached between the Durants and N. F. Frazier that upon payment of the money, he, Frazier, would reconvey the land.

The question, then, is whether the Fraziers had any title to reconvey, that is, whether or not the deed in question conveyed the legal title to Frazier.

It is clear from the record that the foregoing instrument was not intended as a mortgage, merely, but was intended to be a deed; Frazier declined to advance any money on a mortgage, but was willing to advance it on a deed, or to advance it upon delivery to him of the foregoing instrument, which is a deed with every requisite covenant of conveyance, seisin and warranty, and without any qualifications whatever, and could not be construed as anything else than an absolute conveyance of title, except for the parol evidence of an oral agreement which shows that the agreement was that the land would be reconveyed. The agreement alone, that it would be reconveyed, shows of itself that it was being conveyed and was intended to be conveyed.

It is contended by defendants in error that under section 1156, Rev. Laws 1910, every instrument, although purporting to be an ab-

solute conveyance, if intended to be defeasible, or as security for payment of money, shall be treated as a mortgage, and that under our statutes a mortgage on real estate creates merely lien and does not pass the title, and that therefore the conveyance from the Durants to Frazier, being a mortgage under our statutes, did not pass the title to Frazier.

It is unnecessary in this case to decide whether or not the contention of plaintiffs, in error would be well taken if the controversy were settled by our statutes. But the land involved herein and the parties to the instrument, or at least the grantors, Durant and his wife, resided in what was the Indian Territory, prior to statehood, and the deed in question, having been executed and delivered in November, 1906, prior to statehood, the rights of the parties under the instrument and the effect of the instrument in question were fixed by the statutes then in force in the Indian Territory, which were the Statutes of Arkansas.

Under the Statutes of Arkansas, as construed by the Supreme Court of that state, a deed though absolute on its face, if intended as the security for money, was regarded in equity as a mortgage, that is the rights of the parties were adjudicated and determined by the courts of equity and the parties decreed the same rights that they would have been entitled to receive if the deed had in fact been a mortgage. Porter v. Clements, 3 Ark. 264; Johnson v. Clark, 5 Ark. 321; Blakemore v. Byrneside, 7 Ark. 505; McCarron v. Cassidy, 18 Ark. 34; Striker v. Hershey, 38 Ark. 264.

But under the Statutes of Arkansas, as construed by the Supreme Court of that state, a mortgage on real estate, as under the common law, conveyed the title. In Kline v. Ragland, 47 Ark. 111, on page 117, in deciding whether title passed to the mortgagee, the court said:

"But as the mortgage is, with us, at common law, the conveyance of a conditional estate, and the statute by its terms applies to any conveyance purporting to convey a fee simple title or any less estate (Mansf. Dig., sec. 642), the provisions must be held to apply to mortgages equally as to conveyances absolute in form. Clark v. Baker, 14 Cal. 612; Vallejo Land Assn. v. Viers, 48 Id. 572."

In Turman v. Sanforth (Ark.) 61 S. W. 167, decided February 16, 1901, the Supreme Court of Arkansas, in discussing the rights of a mortgagee, said:

"The legal title, it is true, passes to him by the mortgage, but he holds it for the protection of his debt and for this purpose only."

Again in the same opinion, the court said:

"If only the legal title in the mortgagee passed it would be worthless; for the legal title can be used by the mortgagee only to collect his debt."

Hence it is immaterial in this case whether or not the instrument from the Durants to Frazier was anything more than a mortgage, as under the Arkansas statute a mortgage of real estate conveyed the legal title thereto.

Therefore, Frazier having legal title, could convey such title to his grantees and the deed from his executrix to Melvina Durant conveyed title to her.

And in addition to this, it is held under the weight of authority that a deed absolute on its face, though given to secure the payment of money, and though treated as a mortgage, conveys the legal title to the grantee. Cottrell v. Moran (Mich.) 101 N. W. 561; Grover v. Fox, 36 Mich. 553; Walcop v. McKinney, 10 Mo. 229; Gray v. Folwell (N. J.) 41 Atl. 869; Kerr v. Davidson, 32 N. C. 27; Murr v. Flaving (S. D.) 83 N. W. 688; Board v. Kirtland, 8 Ohio, 21; Rawson v. Plaisted (Mass.) 23 N. E. 722; Loring v. Melendy, 11 Ohio, 355; Groves v. Williams, 69 Ga. 614; McCalla v. Am. Land Mortg. Co. (Ga.) 15 S. E. 687; First National Bank v. Tighe (Neb.) 68 N. W. 490; Powell v. Crow (Mo.) 102 S. W. 1024; Shumate v. McLendon (Ga.) 48 S. E. 10; Pardee v. Treat, 82 N. Y. 385; Carr v. Carr, 52 N. Y. 251.

See, also, notes to Flynn v. Holmes, 11 L. R. A. (N. S.) 209.

In the case of Wagg v. Herbert, 19 Okla. 525, which was appealed to and affirmed by the Supreme Court of the United States, Mr. Justice Brewer, in delivering the opinion, 215 U. S. 551, said:

"Of course upon the face of the papers the deeds of May, 1901, vested in the defendant the title to the fifty-five acres."

The deed of reconveyance having been made to Melvina Durant pursuant to the express desire and at the special request of Pier Durant, and such deed being on its face an absolute conveyance of fee simple title, it vested the fee simple title in Melvina Durant.

Pier Durant had the right to convey this land to his wife or to have it conveyed to her, either as a gift outright, or in payment of a debt owed to her, and in the absence of fraud or the interest of creditors the presumption is in favor of such conveyance. Arp v. Jacobs (Wyo.) 27 Pac. 800; 21 Cyc. 1284, 1287 and 1297, and authorities cited in

notes; Manning v. Maytubby, 42 Okla. 414, 141 Pac. 781; Veeder v. McKinley Loan & Trust Co., 86 N. Y. 982; Whitley v. Ogle, 20 Atl. 284. And the reconveyance having been made since statehood the rights of the parties thereto are determined under the Statutes of Oklahoma.

There was no testimony tending to overcome the presumption in favor of this conveyance. On the other hand the testimony showed conclusively and is undisputed, that Pier Durant requested the Fraziers to reconvey the land to his wife, Melvina, because he had used her money and wanted by that means to repay her. He told his brother within a few days after the date of the deed that he had deeded it to his wife because he had used her money and had no other means of repaying her, and within nine days after she received the deed from the Fraziers she mortgaged the land in question in her own name and secured a loan thereon. Her acts in this regard were known to her husband, Pier Durant, and he joined her in the execution of the mortgage, and it was at the time of the execution of such mortgage that he explained to his brother, W. A. Durant, why he had it deeded to his wife.

Hence we have not only the instrument of conveyance which creates the presumption in its favor, but we have undisputed evidence that before the deed of reconveyance was made, Pier Durant requested that it be deeded to his wife, and evidence that it was deeded to her at his special instance and request, and evidence that after it was so deeded, he explained to his brother why he had had it so deeded to her, and also evidence that after the deed to her he relinquished further control over the title and she assumd full control over same, and there is no evidence tending to overcome the legal presumption in favor of the instrument itself.

Therefore, the trial court erred in holding that the evidence was insufficient to support an intention on the part of Pier Durant to nave the land conveyed to his wife, and erred in holding that she had no further title than her one-third interest in the land, and erred in holding that plaintiffs had any interest in the land, and erred in deciding against defendants below, who claimed under deed from Melvina Durant.

The judgment is reversed and the cause remanded to the district court of Bryan county with instructions to enter judgment and decree in accord with the conclusions herein reached.

KANE, RAINEY, JOHNSON, McNEILL, and SHARP, JJ., concur.